UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KENNETH DEAN CIMIOTTA,                                    Plaintiff,

v.                                    Civil Action No. 3:17-cv-P594-DJH

RYAN SLAUBAUGH,                                    Defendant.

* * * * *

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion for summary judgment filed by Defendant Ryan

Slaubaugh (Docket Number 34).  After careful consideration, the Court will grant the motion for

the following reasons.

## I.

In his complaint (DN 1), Plaintiff alleged that on September 18, 2016, he was pulled over

by Defendant, an Elizabethtown Police Department (EPD) Officer, because the light on his rear

license plate was not working.  However, he asserted that a video of the traffic stop shows that

the light was working.  He alleged: "After almost a year charges were dropped on September 12,

2017, have been in jail almost six months on these charges."  Plaintiff alleged: "false arrest[;]

unlawful containment[;] illegal search and seizure[;] harassment[; and] profiling."

The motion for summary judgment argues that Defendant had probable cause to arrest

Plaintiff due to a civil traffic infraction of not having his license properly illuminated; that the

grand jury's indictment of Plaintiff after his arrest conclusively established probable cause; that

Defendant is qualifiedly immune; that Plaintiff's claims are too vague and lacking in specificity;

that Plaintiff failed to comply with the discovery process[1]; and that Plaintiff is precluded from recovering punitive damages.

Among the attachments to the summary-judgment motion is Defendant's affidavit (DN 34-2). According to the affidavit, Defendant has been a patrol officer with the EPD since 2013 and serves as a training officer responsible for training new patrol officers. He further claims that in 2015 he completed a three-day course on prosecuting drugged or impaired drivers and is certified as a Drug Recognition Expert. He also avers that in 2015 and 2016 he won the Governor's Award for outstanding achievement in the apprehension of impaired drivers.

Defendant states that at 2:01 a.m. on Sunday, September 18, 2016, Defendant was on patrol and observed a vehicle in the E-town Motel parked with its engine running and lights on. He avers that the "E-town Motel is old, run-down, and is a hotspot for dangerous drug-related activity" (DN 34-2, para. 3). He continues:

> I did not observe anyone come out of the motel and get in the running truck, and did not see anyone do a pre-inspection of the vehicle. I followed the truck as it traveled on South Dixie and turned right onto Springfield Road, and then left onto Pierce Street into "the Bottoms," another area of Elizabethtown that is a known haven for crime and drug-related activity.

(DN 34-2, para. 4).

Defendant avers that as Plaintiff's truck "turned onto Pierce Street, I could not read the truck's license plate. There was a faint light emanating from it but the plate itself was illegible and was only readable when my headlights were shining on it" (DN 34-2, para. 5). He further

---

[1] On initial review, the Court allowed Plaintiff's claims against Defendant in his individual capacity to continue and entered an order governing service and discovery. The Court twice extended the deadlines for discovery. *See* DNs 18 and 25. During the discovery period, Defendant deposed Plaintiff and provided notice of service of discovery records on Plaintiff. However, that notice does not certify that production of all records or documentation relevant to the claims have been produced to Plaintiff. *See* DN 27. Defendant also noticed the Court of service of two supplemental discovery documents. *See* DN 31 and 32. The Court notes that Plaintiff has not complied with the requirements of discovery set out in this Court's Scheduling Order but declines to grant summary judgment on this ground. Plaintiff did make himself available for a deposition, and Defendant points to no discovery he was not able to obtain.

states that "I made the decision to stop the truck for this traffic violation. I did not know who was driving the truck until I pulled it over." Defendant states that "[t]his was a pretext stop. I suspected drug-related activity given the time of the morning, th[e] fact that the engine was left running, and the fact that the truck was departing from the E-town Motel and heading into the Bottoms" (DN 34-2, para. 6).

Defendant's affidavit goes on to describe how he approached the driver's side window, told Plaintiff why he was being stopped, and asked the usual questions, including where Plaintiff had been and where he was going (DN 34-2, para. 7). He avers that he observed that Plaintiff acted very nervously and that his story did not make sense, including the fact that his driver's license indicated that Plaintiff lived on Battle Training Road, which is located in a different direction from the Bottoms (DN 34-2, para. 7-8). He avers that he then asked Plaintiff to get out of his truck, which Plaintiff did, and asked if he could pat him down, which Plaintiff agreed to (DN 34-2, para. 9-10). During the limited pat-down of Plaintiff's outer clothing, Defendant states that he did not feel any weapon but did feel something in his pocket that he recognized to be drugs (DN 34-2, para. 10).

Defendant claims that when he asked Plaintiff what was in his pocket, Plaintiff first replied it was money, which was inconsistent with what Defendant felt; Defendant then shone his flashlight in the pocket and found a clear baggie containing crystal methamphetamine (DN 34-2, para. 11). Defendant arrested Plaintiff and, believing that there was likely more drug-related contraband in the truck, looked into the truck and observed a backpack in plain view (DN 34-2, para. 12-13). According to the affidavit, Defendant found $4,000 in cash, seven baggies of methamphetamine, a digital scale, a baggie of marijuana, and other drug-related paraphernalia (DN 34-2, para. 13). Plaintiff was arrested for rear license not illuminated, first-

degree trafficking in controlled substance, first-degree possession of a controlled substance, possession of drug paraphernalia, and possession of marijuana (DN 34-2, para. 14).

According to the motion for summary judgment, in October 2016, Plaintiff was indicted by a grand jury on the charge of failing to have his license plate properly illuminated and four drug charges. However, on September 5, 2017, the prosecutor dismissed all charges against Plaintiff without prejudice (DN 1, p. 4; DN 34-7, pp. 48-49).

Also attached to the motion is the affidavit of prosecutor Shane Young, the Commonwealth's Attorney for Hardin County, Kentucky, at the time of Plaintiff's arrest (DN 34-10, para. 1). He avers that after Plaintiff's arrest he "took a photograph of [Plaintiff's] license plate while his truck was impounded. The bulb had mud or some substance obscuring it." (DN 34-10, para. 2). He further avers that "[a]s a prosecutor, I typically perform a screening function wherein I examine the facts and charges of each case and make an independent finding as to whether I think that probable cause exists. I screened this case, and found that probable cause existed for a criminal indictment regarding trafficking in methamphetamine" (DN 34-10, para. 3).

A "Warrant of Arrest, Indictment Warrant" was issued on October 31, 2016, a copy of which is attached to the motion (DN 34-14). That document states that the indictment was issued by the Hardin County grand jury on four drug charges and for "rear license not illuminated." *Id*.

In his response[2] (DN 41), Plaintiff argues that Defendant "was acting on his own when he stopped [Plaintiff's] 1996 Dodge truck on a bogus charge. The charge was license plate not lite

---

[2] When Plaintiff did not respond to the summary-judgment motion, the Court entered an Order (DN 36) directing Plaintiff to respond within 30 days and providing Plaintiff with guidance in responding to a summary-judgment motion. Plaintiff requested and received an extension of that time period. Within that time period, Plaintiff filed a

but by his own recording showed this was false and the case was dismissed in Hardin County."

He states that the truck had been on the road since January with the same plate and light without

being stopped for a problem with the light.  Plaintiff further asserts that Defendant illegally

profiled him because he was at a "drug-infested E-town motel and going into the Bottoms."

Plaintiff argues that his response to Defendant's question of where he was going, *i.e.*, his

explanation that he was going to a house where he was house sitting, "makes sense to anybody

who is listing."  However, Plaintiff also asserts that Battle Training Road is "almost a straight

line" from the motel through the Bottoms by way of "North Miles."

In reply, Defendant asserts in pertinent part that he is not arguing that there was not some

degree of light emanating from the license-plate light, but that it was dim, making the license

only readable when his headlights were shining on it.  He states that the pertinent Kentucky

statute requires not only illumination but also legibility.  He also argues that Plaintiff fails to

refute his argument that pretext stops are constitutionally valid.

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).  The party moving for summary judgment bears the burden of demonstrating the

absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence

of evidence to support an essential element of the nonmoving party's case for which he or she

has the burden of proof.  *Id.*  Once the moving party demonstrates this lack of evidence, the

burden passes to the nonmoving party to establish, after an adequate opportunity for discovery,

---

letter (DN 41) which Defendant and the Court interpret to be Plaintiff's response to the summary-judgment motion.
Defendant replied (DN 42) to that response.

the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### A. False arrest, false imprisonment, and illegal search and seizure claims

The Court finds that Defendant has demonstrated that he had probable cause to stop Plaintiff for a civil traffic infraction and had reasonable suspicion to extend the traffic stop. Further, "to prevail on a false arrest claim, a plaintiff must prove that the arresting officer lacked probable cause to arrest the plaintiff[.]" *Halasah v. City of Kirtland, Ohio*, 574 F. App'x 624, 629 (6th Cir. 2014) (granting summary judgment to Defendant on a false-arrest claim because the defendant had probable cause to arrest the plaintiff). Here, Defendant has shown that he had probable cause to arrest Plaintiff upon finding drugs in his pocket. Therefore, Defendant is entitled to summary judgment in his favor on Plaintiff's claims of "false arrest[;] unlawful containment[;] illegal search and seizure[.]" *See, e.g.*, *Lang v. City of Kalamazoo*, 744 F. App'x 282, 290 (6th Cir. 2018) (holding that "because no reasonable jury could conclude that the officers lacked probable cause to arrest Lang," the district court properly granted summary judgment to defendants on the false arrest and illegal search and seizure claims); *Hardesty v. City of Ecorse*, 623 F. Supp. 2d 855, 862 (E.D. Mich. 2009) ("To establish a claim for false arrest, false imprisonment, or malicious prosecution, Plaintiff must show the absence of probable cause.").

"It is well established that a police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime." *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012). "Probable cause is a

reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citation omitted). A police officer's observation of a traffic violation provides sufficient probable cause to authorize a traffic stop. *See, e.g.*, *United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010); *United States v. Burton*, 334 F.3d 514, 517 (6th Cir. 2003). Where probable cause exists to justify the traffic stop, a police officer's subjective intent is irrelevant. *Whren v. United States*, 517 U.S. 806, 813 (1996).

Here, Defendant argues that he conducted a pretext stop and has established that he had probable cause to stop Plaintiff based on the civil infraction of not having his license plate sufficiently illuminated to be legible. Under Ky. Rev. Stat. § 186.170(1), "Plates shall be kept legible at all times and the rear plate shall be illuminated when being operated during the hours designated in KRS 189.030." Defendant states that as Plaintiff's truck "turned onto Pierce Street, I could not read the truck's license plate. There was a faint light emanating from it but the plate itself was illegible and was only readable when my headlights were shining on it."

Attached to the summary-judgment motion is a copy of the deposition transcript of Plaintiff (DN 34-7). In his deposition, Plaintiff stated that before driving his truck in the early morning in question he did an inspection of his vehicle's lights and "so 'he' knew the license plate was illuminated" (DN 34-7, p. 19). However, also at the deposition, Plaintiff was shown the picture of the license plate light which was attached to the summary-judgment motion, stating that he could not tell if there was any dirt or mud on the license-plate light but would say that the "dark stuff" on the bottom of the light bulb was rust (DN 34-7, p. 44).

This case is similar to *United States v. Foster*, 65 F. App'x 41 (6th Cir. 2003) (per curiam). In *Foster*, the state trooper "testified that on the night of the stop, he could not see an

illuminated license plate on Foster's vehicle due to darkness." *Foster*, 65 F. App'x at 44. The Sixth Circuit opined that "[b]ecause Kentucky Revised Statute § 186.170(1) provides unequivocally that '[p]lates shall be kept legible at all times and the rear plate shall be illuminated when being operated during the [period from one-half (½) hour after sunset to one-half (½) hour before sunrise],' *see also* K.R.S. § 189.030, the trooper clearly had probable cause to stop the vehicle for an apparent violation of applicable traffic laws." *Id*.

Here, Defendant has offered evidence showing that the rear license plate light had a substance on it partially obscuring it and that, when the truck turned, the license was no longer legible, a violation of state law requiring that license plates be legible at all times. The Court therefore finds that Defendant has carried his burden of establishing that the traffic stop was proper because he had probable cause to believe that a civil traffic violation occurred.

"If the stop was proper, [the Court asks] whether the degree of intrusion was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012) (internal quotation marks omitted). The Supreme Court recently held that "[a]uthority for" a stop occasioned solely by a traffic-related violation "ends when tasks tied to the traffic infraction are -- or reasonably should have been -- completed." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015).

When a police officer stops a car based upon probable cause that the driver has committed a traffic violation, as here, the stop "is like an investigative detention, the scope of which is governed by *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] principles." *United States v. Perez*, 440 F.3d 363, 370 (6th Cir. 2006). Once the purpose of the traffic stop is completed, "the officer may not further detain the vehicle or its occupants unless something that occurred during the

traffic stop generated the necessary reasonable suspicion to justify a further detention." *Id.* (internal quotation marks omitted).

"Inconsistencies in the claimed purpose of a trip may be grounds for reasonable suspicion." *United States v. Bonilla*, 357 F. App'x 693, 699 (6th Cir. 2009). The location of the stop in a high crime area also may arouse reasonable suspicion. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *United States v. Burton*, 334 F.3d 514, 519 (6th Cir. 2003) ("Particularly where, as here, the traffic stop took place on a street known to the police as a high-crime area, we believe that asking a few questions about illegal activity to the driver of an automobile stopped for a traffic violation at 11:30 p.m. is not unreasonable.").

In the instant case, in addition to his assessment that Plaintiff acted nervously when pulled over, Defendant offers his sworn statement that the E-town Motel is a known hot spot for drug-related activity. He attached to the motion for summary judgment EPD call reports showing that from 2012-2016, the EPD responded to 161 calls at the E-town Motel, many of which involved drug activity. He further states that he observed Plaintiff's truck with the engine running and its lights on in the motel parking lot and that Plaintiff drove his truck away from the E-town Motel into an area of Elizabethtown -- "the Bottoms" – that is also known for drug-related activity. Defendant avers that when he pulled Plaintiff over he suspected drug-related activity given the hour and Defendant having driven from one drug hot spot to another. According to Defendant, he asked Plaintiff normal policing questions after he stopped him and noted that Plaintiff acted very nervous and that his story that he was going to someone's house to "house sit" did not make sense. Because Defendant knew that drug dealers often carry weapons, he asked Plaintiff to step out of his truck. Defendant then patted Plaintiff down, which according to Plaintiff's deposition testimony Plaintiff freely consented to (DN 34-7, p. 27). Defendant

states in his affidavit that during the pat down he felt something that his years of training

indicated was drugs (DN 34-2, para. 10).  When asked what was in the pocket, Plaintiff first

replied money.  Defendant states that he asked again what was in the pocket; this time Plaintiff

said he did not know.  Defendant avers that he then shone his flashlight in the pocket and

observed a baggie of clear-colored drugs, after which he arrested Plaintiff.[3]

### B. Harassment claim

The complaint refers to harassment (DN 1, p. 4), and Plaintiff argues in his response that

Defendant harassed him by asking him questions about where he had come from and where he

was going.

Asking Plaintiff questions about where he had been and where he was headed cannot be

considered harassing in this situation.  *See United States v. Burton*, 334 F.3d at 519 (holding that

"asking a few questions about illegal activity" to the driver of an automobile stopped for a traffic

violation at 11:30 p.m. in a high-crime area is not unreasonable.); *United States v. Orozco*,

No. 02-CR-S-RED, 2011 WL 2416599, at *4 (W.D. Mo. Mar. 30, 2011), *report and*

*recommendation adopted*, 2011 WL 2403313 (W.D. Mo. June 13, 2011) ("[I]f the responses

provided give rise to suspicions unrelated to the traffic offense, the officer's inquiry may be

broadened [including] asking the driver for his license and registration, requesting him to sit in

the patrol car, and inquiring as to the driver's destination and purpose.").  Here, it was 2:00 a.m.

on a Sunday morning and Plaintiff was observed parked at one known drug hot spot and driving

towards another; under these circumstances, it was reasonable for Defendant to ask where

---

[3] There is disagreement between Plaintiff's deposition testimony that he did not leave his engine running while in the motel and Defendant's affidavit which avers that Defendant observed the truck with its engine running.  There is also disagreement between Plaintiff's deposition testimony and Defendant's affidavit regarding whether Plaintiff inspected his truck and its lights before driving it or not.  The Court does not consider these factual disputes to be material to the inquiry in light of other, more pertinent undisputed facts.

Plaintiff was going and where he had been. Defendant thus is entitled to summary judgment on this claim.

### C. Profiling claim

The complaint also refers to "profiling" (DN 1, p. 4), and Plaintiff argues in his response that Defendant's conclusion that Plaintiff may be involved in "drug-related activity" because Plaintiff was at the "drug infested E-town Motel and going into the Bottoms" is profiling and, therefore, not legal. Plaintiff does not claim profiling on the basis of race or ethnicity; and what he complains about, in this context, does not amount to unconstitutional conduct. *See United States v. Sokolow*, 490 U.S. 1, 10 (1989) ("A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion, but the fact that these factors may be set forth in a 'profile' does not somehow detract from their evidentiary significance as seen by a trained agent."). Plaintiff offers no reason for his assertion that he was "profiled" except on the basis of his location and the hour of the night.[4] Defendant is entitled to summary judgment on this claim.

### III.

**IT IS ORDERED** that Defendant's motion for summary judgment (DN 34) is **GRANTED**. The Court will dismiss this action by separate Judgment.

Date: September 26, 2019

**David J. Hale, Judge**
**United States District Court**

cc:    Plaintiff, *pro se*
       Counsel of record
4415.009

---

[4] The citation attached to the summary-judgment motion shows that Plaintiff is a white male.

11